Argued 5 February, decided 19 March, 1907.

RENSHAW v. LANE COUNTY COURT.

89 Pac. 147.

MUNICIPAL CORPORATIONS—EFFECT OF LOCAL OPTION ON POWER TO
REGULATE SALES OF INTOXICATING LIQUORS—IMPLIED AMENDMENT.
1. The general local option law enacted by popular vote in 1904 did
not impliedly amend the existing charters of any cities, and charters
remained unaffected until local option was put into force in the communities in which they were situated by county courts pursuant to the results
of elections.

AMENDMENT—EFFECT OF RE-ENACTING FORMER STATUTE.
2. A re-enactment of a former statute is considered as a continuation
of the language so repeated and not a new enactment as of that date, and
the same rule applies to the use of terms synonymous with those in the
prior statute.
In the statute of 1905, reincorporating the City of Eugene and repealing all acts and parts of acts in conflict therewith, the amendment empowering the common council to license, tax, regulate or prohibit barrooms, drinking shops * * and places where spirituous, malt, vinous or
intoxicating liquors are sold (Sp. Laws, 1905, pp. 243, 250, § 48, subd. 18),
did not amend the old charter respecting the power to prohibit, the word
"intoxicating" used in the new charter being a synonym of the kinds of
liquor specified in the old charter.

From Lane: LAWRENCE T. HARRIS, Judge.

Statement by MR. JUSTICE MOORE.

This is a suit by William Renshaw and his partner against
G. R. Chrisman, as county judge of Lane County, and the other
members of the county court thereof, to restrain them from
making an order prohibiting the sale of intoxicating liquors in
the City of Eugene, and also to have the election held in the
county, to determine whether or not such sales should be prohibited therein, declared invalid so far as the votes cast affect the
city. The complaint states that the plaintiffs are engaged in
selling alcoholic liquors at retail in Eugene, and in April, 1906,
by virtue of an ordinance which was in force pursuant to a charter granted February 18, 1905, they secured from the city a
license to conduct their business therein for the term of one
year, paying therefor the sum of $500; that, relying upon the
faith of the authority conferred, they expended in furnishing a
building, and in procuring a stock of liquors, more than $3,000;
that a purported petition having been presented to the defend-

ants, they made a pretended order that an election should be held June 4, 1906, to determine whether or not the sale of intoxicating liquors should be prohibited in the entire county, including the limits of the city; that, the election having been held, the ballots cast thereat were canvassed, and an abstract thereof made, which purports to show that there were polled 2,276 votes in favor of prohibition and 2,048 against the measure; and that the defendants, as the County Court of Lane County, threaten and will, unless restrained, make an order declaring the pretended result of the election and prohibiting the sale of intoxicating liquors in the entire county, to plaintiffs' irreparable injury. A demurrer to the complaint, on the ground that it did not state facts sufficient to warrant equitable intervention, having been sustained, the suit was dismissed, and the plaintiffs appeal.                                    AFFIRMED.

For appellants there was a brief over the names of *Woodcock & Potter* and *Thompson & Hardy*, with oral arguments by *Mr. Absalom Cornelius Woodcock* and *Mr. Charles Albert Hardy.*

For respondents there was a brief over the names of *George M. Brown*, District Attorney, and *John Monroe Williams,* with an oral argument by *Mr. Williams.*

MR. JUSTICE MOORE delivered the opinion of the court.

The transcript shows that the charter of the City of Eugene, passed in February, 1893, empowered the common council as follows:

"To license, tax, regulate or prohibit barrooms, drinking shops, tippling houses, billiard rooms, dancehouses, and all places where spirituous, malt or vinous liquors are sold": Laws 1893, pp. 564, 574, § 48, subd. 18.

A local option law, initiated by petitions, pursuant to an amendment of the constitution (1 B. & C. Comp. p. 72), was enacted by vote of the citizens of the state at an election held June 6, 1904. Laws 1905, pp. 41, 50. This act prescribes the manner of prohibiting the sales of intoxicating liquors in any county or part thereof, including an incorporated town or city, by a

majority vote of the qualified electors in favor of the measure. An act was passed by the legislative assembly in February, 1905, reincorporating the City of Eugene, and repealing all acts and parts of acts in conflict therewith: Sp. Laws 1905, pp. 243, 279. The new charter was adopted to enable the city to acquire a system of waterworks, to secure a plant for manufacturing gas or generating electricity for illumination, and to sell municipal bonds to raise money therefor. The amendment empowered the common council, *inter alia.* as follows:

"To license, tax, regulate or prohibit barrooms, drinking shops, tippling houses, billiard rooms, dancehouses and all places where spirituous, malt, vinous or intoxicating liquors are sold": Sp. Laws 1905, pp. 243, 252, § 48, subd. 18.

1. It is contended by plaintiffs' counsel that the passage of the local option law referred to so amended the old charter of Eugene as to take from the common council the power to prohibit the sale of intoxicating liquors, and vested the authority in the electors of the county or in the voters who resided in a part thereof, which might include the limits of the city; that when the new charter was passed in February, 1905, restoring to the council the power of which they had been divested in the manner indicated, the enactment was the latest expression of the legislative will, and necessarily repealed the local option law, so far as it had been applicable to Eugene, thereby depriving the electors of authority to prohibit the sale of intoxicating liquors within the city; and, this being so, the vote in favor of prohibition as cast in the entire county, improperly including Eugene, was ineffectual for that purpose within the limits of the city, and for these reasons errors were committed in dismissing the suit, and in not granting the injunction invoked.

An examination of the local option law convinces us that, though the enactment is general, and became operative in the entire state at the time of its passage, it did not effect any material change in the existing municipal charters which authorized the licensing or permitted the prohibition of the sale of intoxicating liquors in an incorporated town or city, until its

provisions were made specially applicable to a particular locality
by a majority vote of the electors thereof in favor of prohibition.
The law thus enacted by the people should be read in connection
with the charters mentioned, and is, in effect, a declaration
that an exercise of the powers granted by the legislative assembly
to incorporated towns and cities, as evidenced by municipal
charters, to issue or to deny licenses for the sale of intoxicating
liquors, might be continued until changed in the manner pre-
scribed.   The law adverted to practically ingrafted upon the
charter of every city or incorporated town in the state an amend-
ment limiting the powers granted, as indicated by the quoted
words following:   The common council (or other legislative
body) shall have power, within the municipal limits, "until de-
prived thereof in the manner prescribed in the local option law,
enacted by the people June 6, 1904," to license, tax, regulate or
prohibit, etc.: *Sandys* v. *Williams.* 46 Or. 327 (80 Pac. 642);
*Fouts* v. *Hood River,* 46 Or. 492 (81 Pac. 370: 1 L. R. A.,
N. S., 483); *Baxter* v. *State,* 49 Or. 356 (88 Pac. 677).   Such
being the effect of the local option law, it did not take from the
common council of Eugene the power which they acquired under
the charter, until they were deprived thereof by a majority vote
in favor of prohibition by the electors of Lane County, which
territory included the limits of the city.

2. Nor do we think the act of February, 1905, amended the
old charter in respect to the power mentioned, for an examina-
tion of the clauses hereinbefore set out will show that they are
identical, except that in the new charter the word "intoxicat-
ing" is inserted.   The beverages mentioned in the old charter are
"spirituous, malt or vinous," and as the qualifying word "in-
toxicating," used in the new charter, is a synonym of the kinds
of liquor specified in the old, no material change was made in
or force added to that clause by the alleged amendment.   The
new charter, so far as it related to the grant of power to license
or to prohibit the sale of intoxicating liquors, was not a new
statement of the authority conferred, but a repetition of the
earlier enactment; and, this being so, no change was made in

49 OR,— 34

the original clause relating to the power to prohibit: *Allison* v. *Hatton,* 46 Or. 370 (80 Pac. 101).

No error having been committed as alleged, the decree is affirmed.                                                              AFFIRMED.