Argued October 7, decided October 27, 1908.

## HALL *v.* DUNN.

[97 Pac. 811.]

EQUITY—JURISDICTION—LEGAL REMEDY—EFFECT.

1. Under Section 390, B. & C. Comp., a suit lies in equity to enforce or protect a private right, etc., when there is no plain, adequate, and complete remedy at law; equity jurisdiction not being defeated by concurrent law jurisdiction, unless the legal remedy, as to final relief and the mode of securing it, is as efficient as that in equity.

INJUNCTION—JURISDICTION—LEGAL REMEDIES—"WRIT OF REVIEW."

2. The "writ of review," by Section 594, B. & C. Comp., made substantially the same as the common-law writ of certiorari, is a special proceeding; and under Section 597 the only inquiry proper upon a return to the writ is a question of law, in the examination of which the parties are not entitled to a jury trial, so that the existence of a remedy by court of review does not necessarily exclude a remedy in equity.

INJUNCTION—PROPRIETY OF REMEDY—MULTIPLICITY OF ACTIONS.

3. Multiplicity of criminal actions against one, or of civil actions to recover damages he might sustain, is not alone sufficient to authorize equity to grant an injunction in a cause in which relief could have been obtained at law.

MUNICIPAL CORPORATIONS — VOID CRIMINAL LAWS ENFORCEMENT — LIABILITY.

4. Municipal corporations are not generally liable for trespasses by their officers in the enforcement of void enactments in the attempted exercise of police powers.

INJUNCTION—PROPRIETY OF REMEDY—WRIT OF REVIEW AS REMEDY.

5. A saloonkeeper is not prevented from suing to enjoin county officers from prohibiting the sale of intoxicants in the county pursuant to the result of an election, because he could have tested the validity of the order by a writ of review, on the ground that every sale by him until proceedings under a writ of review could be determined might subject him to prosecution, and that, on account of the insolvency of officers prosecuting him and the non-liability of municipal corporations, he might be unable to recover damages on the law finally appearing to be void.

INJUNCTION — PROPRIETY OF REMEDY — RESTRAINT OF CRIMINAL PROSE-CUTIONS.

6. The general rule that injunction will not lie to restrain criminal proceedings is subject to exception where property rights are affected.

STATUTES—ENACTMENT—TIME OF TAKING EFFECT.

7. The local option law (Gen. Laws 1905, p. 41), which provides that its clauses may be made applicable to any county, etc., upon compliance with specified conditions, was approved by a majority of the votes thereon June 6, 1904, and was declared by the Governor's proclamation to be effective June 24th. *Held* that, under constitution Article I, § 21, providing that the taking effect of no law shall be made to depend upon any authority, except as provided in the constitution, the law must be regarded as having taken effect June 24th, though it is in the nature of an enabling act, so far as the provisions can be made particularly applicable to a county, etc.; but where the law is so employed it necessarily relates back to the time of the promulgation·

STATUTES—LEGISLATIVE POWER.

8. The legislative assembly, when not interdicted by the constitution, is a lawmaking body of co-ordinate authority with the people, when they exercise their reserved initiative power.

INTOXICATING LIQUORS—LOCAL OPTION LAW—LEGISLATIVE POWER.

9. Prior to the amendment, on June 4, 1906, of constitution Article XI, § 2, so as to prohibit the legislature from enacting, amending, or repealing municipal charters, the legislature could alter a city's charter, so as to take the city's territory out of the local option law (Gen. Laws 1905, p. 41).

INTOXICATING LIQUORS—STATUTES—REPEAL.

10. The local option law (Gen. Laws 1905, p. 41), effective June 24, 1904, provides that its clauses may be made applicable to any county, etc., by com-

pliance with specified conditions. Medford City Charter (Sp. Laws 1905, p. 996, c. 4) § 25, subd. 19, authorizes the city to license, etc., saloons, irrespective of any general law. The title declares a purpose "to incorporate the city, ＊ ＊ define its powers and duties and to repeal all acts and parts of acts in conflict therewith." The charter repeals all conflicting acts or parts of acts, general or special. *Held*, that the charter expressly and impliedly repeals the local option law so far as its provision might have been applied to such city.

STATUTES—REPEAL—GENERAL AND SPECIAL LAWS.

11. Though a general statute will not impliedly repeal a special law previously enacted, if the special law is the later enactment, it limits the effect of the prior general act from which it differs.

CONSTITUTIONAL LAW—SPECIAL PRIVILEGES—INTOXICATING LIQUORS.

12 Medford City Charter (Sp. Laws 1905, p. 996, c. 4) § 25, subd. 19, authorizing the city to license saloons, etc., does not infringe constitution Article I, § 20, prohibiting the granting of privileges not equally belonging to all citizens, since the sale of intoxicants is not a privilege exercisable as of common right.

CONSTITUTIONAL LAW—MUNICIPAL CORPORATIONS—CHARTERS—AMENDMENTS.

13. The amendment of constitution Article XI, § 2, adopted June 4, 1906, and empowering municipal voters to amend their charters, etc., is not self-executing, and operates prospectively only, so that it did not alter a charter enacted by the legislature February 7, 1905 (Sp. Laws 1905, p. 989).

From Jackson: HIERO K. HANNA, Judge.

Statement by MR. JUSTICE MOORE.

This is a suit by J. C. Hall against George W. Dunn, as County Judge, and Joshua Patterson and George Brown, as County Commissioners, of Jackson County, to enjoin them, as the county court thereof, from making an order declaring the result of a majority of the votes cast in the entire county in favor of prohibition and directing the absolute interdiction of the sale of intoxicating liquors therein, so far as the mandate might affect the City of Medford.

The complaint states generally that, pursuant to an ordinance of that city, the plaintiff secured a license June 6, 1908, permitting him to sell at retail in that municipality, spirituous, malt, and vinous liquors for a term of six months; that at a general election held June 1, 1908, there was submitted to the voters of Jackson County, as a whole, including the City of Medford, the question whether or not the sale of intoxicating liquors should be prohibited, and 2,138 votes were cast in favor

of the measure and 1,881 against it; that the defendants are the respective officers mentioned, and as such threaten to convene the county court to declare the result of the election and to make an order absolutely prohibiting the sale of intoxicating liquors in the entire county, which direction they have no authority to make, so far as the prescription may affect Medford, in that the local option liquor law and all other related enactments do not apply to that city; that the charter of Medford, enacted February 6, 1901, conferred power upon the council to tax and regulate the sale of intoxicating liquors; that such act was repealed by the legislative assembly in the year 1905, when a new charter was granted, authorizing the council to license, tax, regulate, or prohibit the sale of intoxicating liquors; that the plaintiff has for several years prior hereto been engaged in keeping a saloon at Medford, and is the owner therein of fixtures and of a stock of liquors, used in the business, of a greater value than $2,500; that, unless restrained, the defendants will execute their menace, thereby preventing the plaintiff, to his injury and damage, from conducting his business in that city; and that he has no plain, speedy, or adequate remedy at law for his loss, because the laws of Oregon contain no provision for contesting an election held for the purpose of voting upon the question of prohibition. A demurrer to the complaint, on the ground that it did not state facts sufficient to constitute a cause of suit, was overruled, and, the defendants declining further to plead or answer, the relief prayed for was granted, and they appeal.                              AFFIRMED.

For appellants there was a brief over the names of *Mr. B. F. Mulkey,* Prosecuting Attorney, and *Messrs. Colvig & Durham,* with an oral argument by *Mr. William M. Colvig.*

For respondent there was a brief over the names of *Mr. Robert G. Smith* and *Mr. E. E. Kelly,* with an oral argument by *Mr. Wallace McCamant.*

MR. JUSTICE MOORE delivered the opinion of the court.

1. The right of an equity tribunal to grant an injunction in the case at bar is challenged on the ground that the plaintiff could, by a writ of review, have tested the validity of the order of the county court directing an election to be held in the entire county, and, as an adequite remedy at law was thus afforded, errors were committed in overruling the demurrer and in granting the relief awarded. A suit in equity may be maintained in this State for the enforcement or protection of a private right, or the prevention of or redress for an injury thereto, in all cases where there is not a plain, adequate, and complete remedy at law: Section 390, B. & C. Comp. The right of an equity tribunal to hear and determine a cause, of which a court of law may have concurrent jurisdiction, is not defeated unless the legal remedy, in respect to the final relief and the mode of securing it, is as efficient as the redress which a court of chancery can afford under the same circumstances: *South Portland Land Co.* v. *Munger,* 36 Or. 457, 473 (54 Pac. 815, 60 Pac. 5); *Benson* v. *Keller,* 37 Or. 120, 129 (60 Pac. 918); *Livesley* v. *Johnston,* 45 Or. 30, 50 (76 Pac. 13, 496: 65 L. R. A. 783: 106 Am. St. Rep. 647). The statute, prohibiting equitable intervention except in the cases specified, is probably declaratory of a pre-existing rule, founded upon the principle that in the ascertainment of disputed questions of fact the fundamental law guarantees in all civil cases the right to a trial by jury: Constitution Oregon, Art. I, § 17; *Phipps* v. *Kelly,* 12 Or. 213, 215 (6 Pac. 707).

2. The writ of review, which is substantially the common-law writ of *certiorari,* is denominated a "special proceeding": Section 594, B. & C. Comp. The return to the writ brings up the record of the inferior court, officer, or tribunal, not for the purpose of ascertaining an issue of fact, but to determine whether or not the functions of the court, officer, or tribunal have been exercised erron-

eously, or that the jurisdiction employed has been exceeded: Section 597, B. & C. Comp. It will thus be seen that the only inquiry to be considered, upon the return to a writ of review, is a question of law, in the examination of which the parties are not entitled to a jury trial, thus taking the proceedings out of the reason usually assigned for excluding equitable interposition.

3. If a writ had been issued to review the specified action of the county court, every sale by the plaintiff of intoxicating liquor in Medford, until the proceedings had been finally determined, might have subjected him to criminal prosecutions for alleged violations of the provisions of the local option liquor law; whereas a temporary injunction would have prevented the maintenance of such actions until the suit in equity had terminated. Multiplicity of criminal actions against the plaintiff, or of civil actions by him for the recovery of the damages which he might sustain, is not alone deemed sufficient always to authorize a court of equity to assume jurisdiction and to grant an injunction in a cause in which relief could have been obtained in an action at law: 22 Cyc. 791.

4. Though an individual may, under some circumstances, maintain an action against a municipal officer for enforcing the provisions of a void criminal law, any judgment that might be rendered in such action would be fruitless if the officer were insolvent; for municipal corporations are not generally liable for trespasses committed by their officers in the enforcement of void enactments in the attempted exercise of police powers: 20 Am. & Eng. Enc. Law (2 d.), 1195. It is evident that a writ of review is not as efficient in the case at bar as the remedy which injunction affords.

5. In *Sandys* v. *Williams,* 46 Or. 327, 336 (80 Pac. 642, 645), it is said: "Where criminal prosecutions under color of a void law are threatened, which act, if enforced, would deprive a party of a property right, a

preliminary injunction may properly be issued to prevent the menaced injury : 1 Spelling (2 ed.), § 24. Equity has jurisdiction to interpose by injunction where public officers, under a claim of right, are proceeding illegally to injure the property of individuals or corporations." The legal principle thus announced has been followed in the cases of *Marsden* v. *Harlocker,* 48 Or. 90 (85 Pac. 328 : 120 Am. St. Rep. 786), and *Renshaw* v. *Lane County Court,* 49 Or. 526 (89 Pac. 147).

6. The rule is quite general that a court of equity has no jurisdiction by injunction to restrain the enforcement of criminal proceedings. This precept, nevertheless, is subject to an exception, in referring to which a text-writer observes : "There are some cases, however, in which a court of equity may enjoin acts affecting property rights though such acts may also be indictable" : Beach, Modern Equity Practice, § 762. The deviation adverted to is well recognized, and is based on the ground that a suit for an injunction is against the officer individually, and therefore not against the municipality, state, or other sovereign power for which he assumes to act : 11 Am. & Eng. Enc. Law (2 ed.), 199; 22 Cyc. 903; *Delaware Surety Co.* v. *Layton* (Del. Ch. 50 Atl. 378, 380; *Nelson* v. *State Board of Health,* 108 Ky. 769, 782 (57 S. W. 501: 50 L. R. A. 383) ; *Gile* v. *Stegner,* 92 Minn. 429, 431 (100 N. W. 101) ; *Mutual Life Ins. Co.* v. *Boyle* (Fed.) 82 Fed. 705, 710; *Board of Liquidation* v. *McComb,* 92 U. S. 531, 541 (23 L. Ed. 623) ; *Noble* v. *Union River Log. Ry. Co.* 147 U. S. 165, 172 (13 Sup. Ct. 271: 37 L. Ed. 123) ; *Smyth* v. *Ames,* 169 U. S. 466, 518 (18 Sup. Ct. 418: 42 L. Ed. 819). If it is assumed, therefore, that a writ of review would have afforded the plaintiff a legal remedy for the injury, which he might have sustained in the manner indicated, a court of equity, based on the facts alleged in the complaint, also has concurrent jurisdiction of the subject-matter of the suit and was authorized to grant a temporary injunction.

7. The next question to be considered is whether or not the City of Medford is exempted from the operation of the provisions of the local option liquor law. The determination of this inquiry necessitates an examination of certain enactments deemed applicable to the discussion. The legislative assembly passed an act February 6, 1901, granting a charter to that city, which authorized the council to enact ordinances and adopt regulations, *inter alia,* as follows:

"To license, tax, regulate or prohibit barrooms, drinking shops, billiard rooms, bowling alleys, dance houses, and all places where spirituous, malt, or vinous liquors are sold or kept for sale; provided, that no license for the sale of spirituous, malt, or vinous liquors shall be granted for any less amount than is or may be provided by the general laws of the State in force at the time of the granting thereof": Sp. Laws Or. 1901, p. 186, c. 4, § 25, subd. 19.

An act was proposed by the people by initiative petition, and approved by a majority of the votes cast thereon at the general election held June 6, 1904, and took effect 18 days thereafter, pursuant to a proclamation of the governor: Gen. Laws Or. 1905, p. 41. This enactment, which is commonly known as the "local option liquor law," provides generally that its clauses may be made applicable to any county, or subdivision thereof, or to any precinct therein, upon compliance with the conditions specified. The legislative assembly passed a law February 7, 1905, repealing the act of incorporation of Medford and granting a charter in lieu thereof: Sp. Laws Or. 1905, p. 996. Subdivision 19 of Section 25 of Chapter IV of the later act confers upon the common council the following power, *inter alia,* to-wit:

"To license, tax, regulate, or prohibit barrooms, drinking shops, billiard rooms, bowling alleys, dance houses, and all places where spirituous, malt, or vinous liquors are sold or kept for sale, irrespective of any general law of the State on this subject enacted by the legislature

or by the people at large; provided, that no license for the sale of spirituous, malt, or vinous liquors shall be granted for any less amount than is or may be provided by the general laws of the State in force at the time of the granting thereof."

The organic law of this State originally contained the following clause:

"Corporations may be formed under general laws, but shall not be created by special laws, except for municipal purposes. All laws passed pursuant to this section may be altered, amended, or repealed, but not so as to impair or destroy any vested corporate rights": Constitution Oregon, Art. XI, § 2.

This section was altered, June 4, 1906, by the adoption of the following amendment:

"Corporations may be formed under general laws, but shall not be created by the legislative assembly by special laws. The legislative assembly shall not enact, amend, or repeal any charter or act of incorporation for any municipality, city or town. The legal voters of every city and town are hereby granted power to enact and amend their municipal charter, subject to the constitution and criminal laws of the State of Oregon."

A comparison of the several dates on which the provisions mentioned were passed will show, that after the enactment of the local option liquor law the legislative assembly repealed the charter of Medford and granted to that city another act of incorporation, which delegation of power was made prior to the amendment of the section of the constitution last above quoted.

It is contended by defendant's counsel that the local option law is simply an enabling act, giving to the people of a county, or of one or more precincts therein, the right to determine whether or not the sale of intoxicating liquors as a beverage shall be prohibited in such specified district; that, though the act went into general effect June 24, 1904, its operation was prospective only, and the statute was not in force until such time as the qual-

ified voters of particular localities might elect to make it potent; that such law does not prohibit the sale of intoxicating liquors in any place in the State, but prescribes the mode by which the enactment may become effective; that during such time as prohibition, under the local option law, is in effect in Medford, the special privileges granted by the charter are not repealed, but merely suspended, and may be revived by a subsequent election, changing the result of the present vote upon the measure; and that the local option act did not become efficacious in Jackson County until June, 1908, thereby impliedly repealing the provisions of the prior amended charter of February 7, 1905, relating to licensing the sale of intoxicating liquors in the City of Medford.

In *Fouts* v. *Hood River*, 46 Or. 492, 502 (81 Pac. 370, 373: 1 L. R. A., (N. S.), 483), it was held that the local option law was not violative of Section 21 of Article I of the Organic Act of the State, which provides that no law shall be passed "the taking effect of which shall be made to depend upon any authority, except as provided in this constitution." In deciding that case, Mr. Chief Justice WOLVERTON, referring to the prohibition measure, says:

"The present law, when enacted, was complete in itself, requiring nothing else to give it validity. It became effective as a law from the time of its enactment. All its provisions were then susceptible of unrestricted operation. When the time came for 10 per cent of the voters of any authorized district to petition the county court to order an election, a way was provided and open, and so the very steps are prescribed in their regular order until an election determines the question of the expediency or inexpediency of enforcing prohibition within the district involved. The law provides for all these things, and this it did as it came from the people duly adopted. It is not the election that breathes into the act its validity or vitality. The act is complete, and a living force without it; but the election, as is designed, and which constituted a part of the enginery of the law, does contribute to designate or determine the contingency

upon which prohibition shall become operative or not, according to the popular will in the locality or localities where involved."

The local option liquor enactment must have been in force as a valid law in every part of the State June 24, 1904, when proclamation to that effect was made by the governor, or the statute would have trenched upon the clause of the constitution to which reference has been made. Any other conclusion would necessarily be a determination that vitality was given to the act by its adoption in any specified locality, that dissolution of the measure might thereafter be effected in such territory by a majority vote of the electors against prohibition, and that reanimation of the law could subsequently be accomplished, in the same or in an altered district, in the manner specified in the enactment; but such a fluctuation would inevitably defeat the entire enactment. The local option law, it is true, is in the nature of an enabling act, so far as its provisions can be made particularly applicable to a county or to a prescribed division thereof; but, when the law is so employed, the enactment necessarily relates back to the time of the promulgation.

8. The legislative assembly, when not interdicted by amendments to the Organic Act of the State, is a law-making body of co-ordinate authority with the people, when the latter exercise the initiative power which they have reserved. The legislature, evidently reaching this conclusion, at the next session after the enactment of the local option law, granted to several municipalities charters, in some of which it was provided that the power conferred to license, tax, regulate, or restrain the sale of intoxicating liquors should be subject to the provisions of the local option liquor law. A clause to that effect appears in the charter of Brownsville (Sp. Laws Or. 1905, p. 293), of Halsey (Sp. Laws Or. 1905, p. 348), and of Junction City (Sp. Laws Or. 1905, p. 834). Other charters were granted at the same time, containing clauses which were

evidently intended to exempt certain municipalities from the operation of the provisions of the local option enactment. Thus the charter of Condon stipulates: "No provision of the law concerning the sale or disposition of any spirituous, vinous, fermented, or malt liquors in Gilliam County, nor any law of the State now or hereafter enacted, shall apply to the sale or disposition of the same in the City of Condon": Sp. Laws Or. 1905, p. 410. The charter of Estacada contains the following provision: "The said laws of Oregon relating to licenses for sale of spirituous, vinous, and malt liquors shall not be in force within the limits of said city": Sp. Laws Or. 1905, p. 884. The amended charter of the City of Medford, containing a similar provision, has been hereinbefore quoted.

It is quite probable that the attempt thus to exempt the cities of Condon, Estacada, and Medford from the provisions of the local option law, and to prevent any further encroachment thereon, impelled the amendment of Section 2 of Article XI of the organic law of the State, so as to prohibit the legislative assembly from enacting, amending, or repealing any municipal charter, and also induced the granting of such power to the legal voters of every city and town, but limiting their authority in such enactments as might contravene the constitution or subvert the criminal laws of the State. The local option liquor enactment has been held to be a criminal law, the provisions of which cannot be violated by the electors of a municipality in legislating in respect to a city charter: *Baxter* v. *State,* 49 Or. 353, 357 (88 Pac. 677, 89 Pac. 369).

9. Prior to the amendment of the fundamental law of Oregon mentioned, the legislative assembly possessed plenary power to alter the charter of Medford so as to take the territory embraced within the boundaries of that city out of the provisions of the local option liquor law.

10. It is maintained by defendants' counsel, however, that such enactment is not referred to in the title to the act reincorporating Medford, nor in the body of the measure, and, as repeals by implication are not favored, any attempted change of the city charter that would contravene the provisions of the local option law is inoperative. Though the title to the act of reincorporation makes no mention of the general law specified, it indicates the repeal of the then existing grant of municipal authority, and contains the following specification: "To incorporate the city of Medford, in Jackson County, Oregon, define its powers and duties, and to repeal all acts and parts of acts in conflict herewith": Sp. Laws Or. 1905, p. 989. The repealing clause, so far as deemed material herein, is as follows: "All acts or parts of acts, either general or special, in conflict herewith, are hereby repealed in so far as they conflict herewith or restrict the powers or duties hereby conferred upon said city or its mayor or council": Sp. Laws Or. 1905, p. 1016. The clause of the charter under consideration is subdivision 19 of Section 25 of Chapter IV, as hereinbefore quoted: Sp. Laws Or. 1905, p. 996. When this charter was granted there was only one general law of the State relating to the subject of restricting the sale of intoxicating liquors as a beverage, and that was the local option liquor law, so that, in the clause quoted, the reference to any general law of the State on this subject, enacted by the legislature or by the people at large, is almost as specific as if it had consisted of a particular mention of the local option liquor enactment.

Construing in *pari materia* the amended provision and the general repealing clause mentioned, it is evident that the language of subdivision 19 of Section 25 (Sp. Laws Or. p. 996) is tantamount to an express repeal.

11. If it be asserted, however, that the abrogation is not express, the provisions of the local option law and of the amended charter are so repugnant, in the respects

mentioned, that both measures cannot be enforced in the City of Medford, and for that reason the earlier statute is impliedly repealed by the later enactment: *Fleischner* v. *Chadwick,* 5 Or. 152, 155; *Stingle* v. *Nevel,* 9 Or. 62, 63; *Strickland* v. *Geide,* 31 Or. 373, 376 (49 Pac. 982). Though a general statute will not impliedly repeal a special law previously enacted (*State* v. *Sturgess,* 10 Or. 58, 62), the rule is well settled that, if the special statute is the later enactment, it necessarily operates to circumscribe the effect of the prior general act from which it differs: 26 Am. & Eng. Enc. Law (2 ed.), 743; Lewis' Sutherland Statutory Construction (2 ed.), § 275. Thus, where a general local option law had, by a majority vote, been made applicable to a specified territory, of which a city formed a part, a subsequent amendment of the municipal charter, authorizing the council to license the sale of intoxicating liquors, impliedly repealed the prior local option law, so far as the city was concerned: *Tabor* v. *Lander,* 94 Ky. 237 (21 S. W. 1056). To the same effect see, also, 23 Cyc. 104.

It is insisted by defendant's counsel that the amended subdivision 25 of Chapter IV of the charter of Medford is a re-enactment of a prior clause of the act of incorporation on the subject involved, and not an amendment; and, this being so, the later enactment does not contravene the provisions of the local option liquor law. The earlier clause thus referred to corresponds in subdivision, section, and chapter with the later act, relates to the power granted to the council, and has been hereinbefore set forth: Sp. Laws Or. 1901, p. 186, c. 4. A comparison of such clause with the subdivision later enacted will show that the prior and subsequent provisions on the matter to which they relate are identical, except that the latter contains language not found in the former, to wit: "Irrespective of any general law of the State on this subject enacted by the legislature or by the people at large." In *Allison* v. *Hatton,* 46 Or. 370, 372

(80 Pac. 101, 102), Mr. Justice BEAN, discussing the legal principle here involved, says: "The rule is that where a section of the statute is amended so as to read 'as follows,' and the section is then set forth, with the changes intended to be made, those portions of the old section that are merely copied into the amendment without change are not to be considered as re-enacted, or as a new statement of the law, but are to be read as a part of the earlier statute, if in conflict with another law passed after the section amended and before the amendatory act, unless there is a clear manifestation of legislative intention to the contrary. In the absence of such an intention, it is the change or additions incorporated in the section amended only that are to be considered enacted." To the same effect see, also, *Renshaw* v. *Lane County Court*, 49 Or. 526 (89 Pac. 147). Applying to the latter enactment the legal principle thus stated, it is apparent from the language so used, and not found in the earlier subdivision, that the legislature intended to repeal the local option law, so far as its provisions might have been made applicable to the City of Medford.

12. It is argued by defendants' counsel that the amended charter violates Section 20 of Article I of the constitution of Oregon, which is as follows: "No law shall be passed granting to any citizen or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens." The sale of intoxicating liquors is not a privilege which can be exercised as of common right, and hence a citizen cannot complain because such advantage is granted to one or more persons, but denied to others: *Sandys* v. *Williams*, 46 Or. 327, 340 (80 Pac. 642) ; *State ex rel.* v. *Richardson*, 48 Or. 309, 316 (85 Pac. 225: 8 L. R. A., (N. S.), 362).

13. The amendment of Section 2 of Article XI of the organic law, empowering the legal voters of every city and town to enact and amend their municipal charters,

subject to the constitution and criminal laws of the State of Oregon, is not self-executing, and operates prospectively only (6 Am. & Eng. Enc. Law, [2 ed.] 917), so that the adoption of such amendment did not alter the charter of the City of Medford as enacted by the legislative assembly February 7, 1905. The amended charter having repealed the provisions of the local option liquor law, so far as the City of Medford is concerned, no error was committed in overruling the demurrer and in granting the relief awarded.

It follows that the decree must be affirmed; and it is so ordered.                                    AFFIRMED.